White, J.
Several of tbe questions originally made in this case have since been decided in tbe case of Lear et al. v. McMillen, 17 Ohio St. 464. Tbe remaining questions we will dispose of in tbe order in which they are presented in tbe argument for tbe plaintiffs in error.
1. Tbe plaintiff below, while being examined as a witness on tbe trial, was allowed to refresh bis memory from tbe items of an account attached to, and made part of, tbe petition in tbe case. • The ruling of the court in allowing this was excepted to, and tbe first question is whether, in so ruling, tbe court erred.
It appears from tbe bill of exceptions, that the original entries were made by the witness at the time of tbe transaction in a memorandum book, which had been lost. Tbe copy was written by tbe attorney as the items were read off to him by tbe witness from tbe original memoranda, and was after-wards compared by tbe attorney reading tbe copy and the witness tbe original, and tbe two were found to correspond. Both tbe witness and tbe attorney testified to tbe correctness of what they respectively did. The use made of tbe copy was to refresh tbe memory of tbe witness as to a series of dates and amounts of bis alleged losses. We think, undei tbe circumstances stated, there was no error in allowing the copy to be so used.
2. Tbe action was brought under tbe second and third sections’ of tbe act of March 12, 1831 (S. & C. Stat. 664), to recover money lost by gaming. .The second section provides “ that if any person or persons, by playing at any game or gámes, or by means of any bet or wager, shall lose to any *61 other person or persons, any sum of money or thing of value, and shall pay or deliver the same, or any part thereof, to the winner or winners, the person or persons so losing and paying or delivering, may . . . sue for, and recover the money or thing of value so lost and paid or delivered, or any part thereof, from the winner or winners,” etc.
The money sought to be recovered was lost at the game of faro. The evidence tended to show that on several occasions the plaintiff furnished the money and employed one Lytle to bet or play for him, but was himself present at the game or play in which the money was lost. On this aspect of the case, the defendants below asked the court to instruct the jury “ that plaintiff, before he can recover in this action, must prove that he himself actually lost the money; if he furnished money to Lytle, and Lytle lost it, the right of recovery is in Lytle, under the pleadings, and the plaintiff cannot recover therefor.”
This instruction was refused, and the court, in substance, charged, that if the plaintiff was present at the game or play in which his money was lost, he was entitled to recover in the same manner as if he had lost the money without the assistance of Lytle. We think there was no error in the charge, nor in the refusal.
It is unnecessary to inquire whether, if the plaintiff had been absent at the time of the play, he could have recovered under the statute. The rule at common law is, that in of-fences less than felony, all who aid, advise, or procure the commission of an offence, though absent at the time of its commission, are principals. But in all classes of offences, those who are present at its commission, giving aid and assistance, are alike principals. In respect to the aspect of the case now under consideration, the plaintiff was as much a player as if he had with his own hands participated in the game. Both he and Lytle were principals in the unlawful game, but the money lost by the play was that of the plaintiff.
8. On the trial the court was asked to charge the. juxy, that if they believed the plaintiff had knowingly sworn *62 falsely to any material fact or circumstance, it not only affected liis credibility, but it was their duty to reject and disbelieve his entire testimony.
This was refused, and in lieu thereof the court instructed the jury, that if they believed that a witness had knowingly testified falsely to a material fact, they were at liberty to discard his testimony altogether; but that the credibility of witnesses was a subject for the consideration and decision of the jury, and they would give the testimony of each witness such weight as they thought it deserved.
The charge asked is substantially the third proposition laid down in the syllabus in Stoffer v. The State, 15 Ohio St. 47. The charge given is in conflict with it. The state of the evidence justified a charge from the court on the subject. "We are, therefore, called upon either to reaffirm or overrule the decision made upon this question in Stoffer v. The State.
We have not felt satisfied with the ruling in Stoffer's case upon the point now in question. And upon full reconsideration of the subject, both in the light of principle and authority, we are led to the unanimous conclusion, that the rule of law was incorrectly stated in that case; and that in the case now before us the coiu*t below did not err in its instruction to the jury on this point.
This is not a case in which we should forbear to correct the error on the principle of stare decisis. It is not a rule of property that is involved, but a rule affecting the practical administration of justice, and which, if wrong, ought at the earliest opportunity to be corrected.
In the administration of justice according to the course of the common law, it is a fundamental rule that it is the duty of the court to decide questions of law, but that the decision of issues of fact, and the passing upon the credibility of witnesses, are exclusively within the province of the jury. The court, by its control over the admissibility of evidence, is required to exclude all that is incompetent, and the jury are relied upon to ascertain the truth from the evidence which the law thus submits to them for their consideration.
*63 The supposed rule in effect declares the witness incompetent, upon the contingency of his having sworn falsely to a fact or circumstance deemed material, by requiring the absolute rejection of his whole testimony, without regard to the motive which may have prompted the false statement, or the object of the witness in. making it. He maybe in the interest of one of the parties, and his object be to favor such party by only making partial disclosures ; yet the rule, as stated, compels the rejection of the testimony that makes against the party in whose interest he is, as well as that which makes for him. Other examples might readily be given to show that the application of the rule as an absolute rule of law, irrespective of circumstances, would be impracticable in its operation, and would often tend rather to defeat than to promote the ascertainment of truth.
The grounds on which the rule has been supposed to rest is, that “faith in a witness’ testimony ca/rmot be partial or fractional.” This is the theory on which it was applied in Staffer’s case, and is recognized as its foundation in the extract from Starkie’s Evidence found in that case.
But this is certainly not universally true; for as was said by Lord Mansfield, in Birmon v. Woodbridge (Doug. R. 788), in speaking of the testimony of a witness : “It is said, that, as the case rests entirely on his evidence, you must take it altogether, and believe the whole; but though the whole of an affidavit or of an answer must be read, if any part is, yet you need not believe all equally. Tou may believe what makes against his point who swears, without believing what makes for it.”
Besides, it never was true that a jury was required, as matter of law, to give equal credit to the testimony of witnesses of equal capacity- having like opportunities of knowing the truth. The relations of the witnesses to the parties and the subject-matter were to be considered, and such weight given to the testimony as the jury, under the circumstances, thought it deserved.
In this State no witness in a civil suit is disqualified by reason of his interest, however great, or by reason of his con *64 vietion of crime; but such interest or conviction may partially affect his credit, or may wholly discredit him, in the minds of the jury. If he is but partially discredited, their faith in his testimony is necessarily partial.
The maxim, falsus m uno, falsus im, omnibus, is derived from the civil law, and addresses itself more particularly to tribunals charged with the investigation of evidence and the determination of issues of fact, and should be applied with more or less force according to circumstances. The maxim is not limited in its application to the matter of the credit due to witnesses who have in some particular testified falsely. The presumption on which it is founded is applicable, with more or less force, to other cases of unfaithful conduct. 1 Sumner’s R. 356.
Under the civil law, justice was administered by fixed tribunals, which were charged with the determination of both law and fact. To this class, under our system of jurisprudence, belong courts of equity, and admiralty courts. In passing upon the credibility of witnesses in determining issues of fact, the maxim is often applied by these tribunals as justifying the total disregard of the testimony of particular witnesses. Such was the case in the opinion in the matter of the Santissima Trinidad, 7 Wheaton, 283; and in Hargraves v. Miller's Administrator, 16 Ohio, 344.
For the administration of justice under the common law, a jury is constituted, to whom, as_a distinct body, is exclusively confided the duty of determining questions of fact.
And we agree with the supreme court of North Carolina, in the case of The State v. Williams (2 Jones. L. R. 257), that “ the maxim is, in a common-law trial, to be applied by the jury according to their own judgment for the ascertainment of the truth, and is not a rule of law in virtue of which the judge may withdraw the evidence from their consideration, or direct them to disregard it altogether.” In that case there is an able and elaborate discussion of the question by Pearson, J.
In Mercer v. Wright (3 Wis. R. 645) the court below had instructed the jury that it was “ a general rule, that if a wit *65 ness, when testifying under oath, states what is false intentionally and knowingly, he is not to be believed in anything he swears to, unless corroborated by other evidence.” On error this instruction was held by the supreme court to be erroneous. The court say: “ It is true, as a general rule, that when a witness deliberately swears falsely in regard to a material fact, the jury are not bound to believe him in any of his statements, unless he is corroborated. But it is wrong to say that the jury are not at liberty to believe him. The maxim, falsus i/n tmo, falsus i/n ómnibus, does not operate to preclude the jury from believing the witness if they choose to do so. The jury may believe any competent witness, though in many instances they ought not. A jury ought not to convict upon the testimony of an accomplice uncorroborated, but all now agree they may do so. It would have b'een correct for the court to give the jury general rules by which the credibility of the witnesses is to be judged, but it was not correct to tell them that they were not at liberty to believe the witness.”
To the same effect are the decisions in Knowles v. The People, 15 Mich. R. 411, and in Lewis v. Hodgdon, 17 Maine R. 267. And Taylor, in his recent work on Evidence, places the testimony of such a witness on a similar footing with that of an accomplice. Taylor on Ev. vol. i. § 171.
4. The jury rendered a verdict in favor of the plaintiff against four of the defendants by name, and made no finding either for or against the other defendants. After verdict the plaintiff dismissed the action as to the defendants not embraced in the finding of the jury, and the court rendered judgment against the remaining defendants in accordance with the verdict. All of the defendants originally sued join in the present petition in error to reverse the judgment, and it is claimed that the verdict will not support the judgment.
The dismissal of the action as to part of the defendants is not complained of, except as it is supposed to constitute a ground for the reversal of the judgment recovered by the' *66 plaintiff below. It is that judgment alone which is sought to be reversed by the petition in error.
But the defendants below, as to whom the suit was dismissed, are not prejudiced by the judgment against their co-defendants. And where, as in this case, all of the defendants are sued as principals in an unlawful transaction, the dismissal of the suit as to part of the defendants without a finding of the issues as to them, constitutes no ground on which the remaining defendants, against whom a verdict has been rendered, can ash a reversal of the judgment.

Judgment affirmed.

Brinkerhoee, C.J., and Scott, Welch, and Dav, JJ., concurred.